## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CHRISTINE SMITH, KISHA REID, SHEILA GLENN, ROCK CITY CYCLES, INC., individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>BIO-LAB, INC., KIK CONSUMER PRODUCTS, INC., and KIK CUSTOM PRODUCTS, INC.<br><br>   Defendants. | Case No.<br><br>**Complaint – Class Action**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

This class action complaint is brought by Plaintiffs Christine Smith, Kisha Reid, Sheila Glenn, and Rock City Cycle, Inc. ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class"), by their undersigned counsel, brings this class action against Defendants Bio-Lab, Inc., KIK Consumer Products, Inc. and KIK Custom Products, Inc. ("Defendants"). The allegations set forth below are based on personal knowledge as to Plaintiffs' own acts and on investigation conducted by counsel as to all other allegations.

## <u>PARTIES</u>

1.    Plaintiff Christine Smith is a resident of Rockdale County, Georgia and a

1

citizen of the state of Georgia.

2.   Plaintiff Kisha Reid is a resident of Rockdale County, Georgia and a citizen of the state of Georgia.

3.   Plaintiff Sheila Glenn is a resident of DeKalb County, Georgia and a citizen of state of Georgia.

4.   Plaintiff Rock City Cycle, Inc. is a domestic profit corporation organized under the laws of the state of Georgia with its principal place of business in Rockdale County, Georgia.

5.   As a result of Defendants' negligent, careless, reckless and/or intentional conduct in connection with the September 29, 2024 chemical fire and resulting toxic chemical plume, Plaintiffs have suffered damages including, but not limited to, an increased risk of disease from exposure to and inhalation of toxic chemicals, contamination of property by dangerous levels of toxic chemicals dispersed by Defendants and the loss of use and enjoyment of property and resulting inconvenience, disruption and emotional distress.

6.   Defendant Bio-Lab, Inc. is a Delaware corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5, and a registered service agent of CT Corporation System, 289 S. Culver St., Lawrenceville, GA, 30046-4805. Upon information and belief, Bio-Labs, Inc. is a wholly-owned subsidiary of KIK Consumer Products, Inc.

7.      Defendant Bio-Lab, Inc. is a Georgia company engaged in the business of manufacturing and/or supplying swimming pool and spa water care chemicals under various product names.

8.      At all relevant times, Bio-Lab, Inc. owned and operated the Conyers, Georgia chemical plant located at 1700 Covington Hwy, Conyers, GA 30012 ("Conyers Plant").

9.      Defendant KIK Consumer Products, Inc. is a Canadian corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5.

10.     Defendant KIK Consumer Products, Inc.  owned and operated the Conyers plant at all relevant times.

11.     Defendant KIK Custom Products, Inc. is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.

12.     KIK Consumer Products, Inc. and KIK Custom Products, Inc. are a few of North America's largest independent manufacturers of consumer products.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the

sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendants, and (4) there are more than 100 Class members.

14.    This Court also has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. . § 1332(a) because there is complete diversity between Defndants and Plaintiff, along with all members of the proposed Class, and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

15.    This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts with this district.

16.    On information and belief, Defendants have systematically transacted and conducted business in the state of Georgia, including the manufacturing, selling, using and transporting of hazardous materials, and these causes of action arise, in part, from the same.

17.    On information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the State of Georgia.

18.    On information and belief, at all relevant times, Defendants derived and continue to derive substantial revenue from providing services in the state of Georgia.

4

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Rockdale County, Georgia in the Northern District of Georgia, Atlanta Division.

## FACTUAL ALLEGATIONS

20.     Bio-Lab owns and operates the Conyers Plant, which is a chemical manufacturing facility that manufactures pool and spa chemicals under brands including BioGuard, SpaGuard, Spa Essentials, Natural Chemistry, SeaKlear, and AquaPill.

21.     The Conyers Plant receives, blends and packages Trichloroisocyanuic Acid ("TCCA") into finished consumer products including a chlorinating agent often used for sanitizing swimming pools and hot tubs.

22.     When TCCA comes into contact with a small amount of water, it causes a chemical reaction that generates heat and decomposes the TCCA thus producing chlorine gas and nitrogen trichloride.

23.     Chlorine is a toxic substance categorized by the EPA as Toxicity Category I (the highest degree of acute toxicity) for oral, dermal, eye and inhalation effects.

24.     The Conyers Plant stored, kept and maintained TCCA.

25.     Defendants knew or should have known that TCCA may violently produce toxic and hazardous gases, produce enough heat to self-ignite and ignite

other nearby combustibles.

26.     On Sunday, September 29, 2024, at approximately 5:30 a.m., a fire erupted on the roof of the Conyers Plant, which triggered the fire suppression sprinkler to activate spraying water onto a water-reactive chemical inside the plant, causing a chemical reaction that produced hazardous gas and a large plume of smoke and chemicals.

27.     The incident also caused a fire on the roof of the Plant, which caused the roof to collapse.

28.     The fire was contained by 12:00 p.m., but then reignited while workers were attempting to contain the reactive chemicals in the Plant, causing black smoke to billow from the facility.

29.     Removal of the hazardous chemicals from the damaged Plant would require heavy machinery.

30.     The second fire was extinguished around 4:00 p.m., but thick black smoke was still visible in the air around the Plant.

31.     The billowing smoke from the fire is depicted in the photo below.



32.     Firefighters were forced to use water to extinguish the fires despite the water potentially reacting with the chemicals and creating more toxic fumes.

33.     The uncontrolled chemical reaction, fire, and damage to the Plant caused hazardous chemicals, including chlorine-based pool chemicals, to stream into the air and throughout the surrounding community.

34.     The hazardous smoke includes chlorine, which is a toxic gas that can irritate the respiratory system, eyes, and skin.

35.    Chlorine can be smelled at concentrations as low as 3 ppm.

36.    Coming into contact with chlorine is extremely dangerous at concentrations as low as 10 ppm.

37.    Chlorine causes coughing and vomiting at 30 ppm, lung damage at 60 ppm, and death in a short time after exposure to 1000 ppm.

38.    The Occupational Safety and Health Administration's permissible exposure limit for chlorine is 1 ppm.

39.    The National Institute for Occupational Safety and Health's recommended exposure limit is 0.5 ppm over 15 minutes.

40.    Chlorine is heavier than air and therefore settles near ground level, staying present in the area around the Plant and taking more time to dissipate.

41.    The chemicals and fire formed a thick smoke that spread throughout the community and affect the health of anyone who comes in contact with them.

42.    The chemical smoke can also enter into and stay inside buildings for a longer time than it takes to dissipate in outside air, causing continuing harm to people inside homes, schools, and businesses.

43.    Rockdale County issued an evacuation order covering 8 square miles and affecting approximately 17,000 people living near the Plant as well as a shelter-in-place order covering the entire county, 132 square miles, affecting over 90,000 individuals.

44.     Individuals near, but not inside, the evacuation zone were also ordered to stay away from the area.

45.     Individuals located north of the evacuation zone were ordered to shelter in place, including to remain indoors with the windows and doors closed, and turn off their air conditioners.

46.     Individuals who chose not to evacuate or could not evacuate were ordered to shelter in place.

47.     The response to the disaster required out-of-state support due to the size and extremely hazardous nature of the chemical smoke, as well as emergency management workers being occupied with efforts related to Hurricane Helene, which had hit Georgia in the previous days.

48.     Churches near the affected area were ordered to cancel services or send members home immediately.

49.     A section of Interstate 20 was closed in both directions due to the heavy smoke. The highway was reopened around 8:00 a.m. on Monday, September 30.

50.     Schools, colleges, and businesses were also forced to close to protect their students and employees.

51.     A small number of schools, gymnasiums, and recreation centers outside of the impacted area were opened to house displaced individuals who were forced to evacuate.

52.    Individuals who evacuated have been forced to pay for hotels, stay with friends or family, or find other accommodations.

53.    Individuals with medical issues are in greater danger not only from exposure to the hazardous smoke, but also because of difficulties they may face in evacuating, sheltering in place, or obtaining medical care during the emergency.

54.    By Wednesday afternoon, individuals were still displaced, and Rockdale County warned residents to continue sheltering in place until Friday, October 4, 2024.

55.    Over 24 hours after the beginning of the disaster, residents in nearby areas continued reporting a heavy chemical haze throughout the community and a strong chlorine smell.

56.    That chlorine can be smelled by individuals near the disaster area is particularly alarming because chlorine is extremely hazardous at concentrations only slightly higher than the threshold for scent.

57.    At all relevant times, it was reasonably foreseeable to Defendants that the risk of a chemical fire and the release of toxic smoke and dust plume could impact the properties and present a hazard to the Rockdale residents located near the Conyers Plant.

58.    The Conyers Plant has a long history of fires and other similar incidents in which hazardous chemicals leaked from the facility and adversely impacted

nearby residents and businesses.

59.     In 2004, the warehouse of the Conyers Plant caught fire injury twenty-eight people. The fire produced a toxic chlorine plume that affected residents within 50 miles of the Conyers Plant resulting in a $7 million settlement paid to those impacted by the fire.

60.     In 2016, a fire ignited in a storage shed at the Conyers Plant.  The fire was only noticed and reported because a nearby resident smelled smoke and chemicals and called the authorities. The fire was fueled by reactions from chlorine pellets contained in the storage shed. Residents within a 1-mile radius of the facility were evacuated.

61.     In 2020, a chemical reaction and the decomposition at the Conyers Plant released a plume of hazardous chemicals, including chlorine, that exposed personnel and firefighters to dangerous fumes.[1] Surrounding businesses were evacuated, and a portion of Interstate 20 near the facility was closed for six hours.

## PLAINTIFF ALLEGATIONS

62.     Plaintiff Christine Smith resides at 2073 Appaloosa Way, Conyers, Georgia.  Ms. Smith was forced to evacuate due to the fires and associated gases and has endured, among other things, health effects, loss of use and enjoyment of property and property value depreciation.

---

[1] https://www.csb.gov/us-chemical-safety-board-sends-team-to-investigate-major-chemical-fire-at-bio-lab-facility-in-conyers-ga/

63.     Plaintiff Kisha Reid resides at 2725 Pitlochry St. SW, Conyers, Georgia.   Ms. Reid has been forced to shelter-in-place at her home, sustained property damage and has endured, among other things, physical symptoms associated with the fires and associated gases. Further, she has missed worked due to the fires.

64.     Plaintiff Sheila Glenn resides at 5865 Fairington Farms Lane, Stonecrest, GA 30038.  Ms. Glenn is an employee of New Black Wall Street Market located at 8109 Mall Parkway, Stonecrest, GA 30038.  Ms. Glenn has suffered, among other things, health impacts from the fires and associated gases preventing her from working.

65.     Plaintiff Rock City Cycles, Inc. is located at 1012 Iris Drive SW, Conyers, GA 30094. Rock City Cycles, Inc. has endured, among other things, a loss of business operations and revenue.

## CLASS ACTION ALLEGATIONS

66.     This action is brought as a class action under Fed. R. Civ. P. 23.

67.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs intend to seek certification of a Class defined as follows:

> All individuals who resided, owned property, worked or operated businesses and were subject to the evacuation orders, shelter-in-place orders and/or shelter-in-place advisories issued as a result of the fire and release of chlorine and other hazardous chemicals at the Bio-Lab facility in Conyers, Georgia beginning on September 29,

2024.

68.     The Class excludes the following: Defendants, their affiliates, their current and former employees, officers, and directors, and the judge assigned to this case.

69.     The Class definition may be modified based upon discovery and further investigation.

70.     The proposed Class meets the criterial for certification under 23(a) and 23(b)(1) and/or (b)(3).

71.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class is believed to total more than 90,000 persons, but the precise number of class members is unknown at this time. The size of the class may be ascertained through discovery of records from Defendants and third parties.

72.     *Commonality*: There are questions of law or fact common to the Class, including, without limitation:

  a.     Whether Defendants negligently maintained, controlled, oversaw, inspected, or monitored the Bio-Lab facility in Conyers, Georgia;

  b.     Whether Defendants negligently manufactured, maintained, controlled, oversaw, inspected, or monitored hazardous chemicals;

  c.     Whether Defendants acted with conscious disregard for the safety and health of Plaintiffs and Class Members entitling Plaintiffs and Class Members to punitive damages;

  d.     Whether Defendants created a nuisance;

13

e.      Whether Defendants' actions constitute negligence per se;

f.      Whether Defendants' actions constitute trespass;

g.      Whether Defendants are strictly liable for an ultrahazardous activity;

h.      Whether Defendants are liable for the defective and unreasonably dangerous conditions of allowing hazardous chemicals to burn or otherwise release into air; and

i.      Whether Defendants' misconduct, negligence, and recklessness, and breaches of legal duties owed to businesses and residents of the community resulted in the Plaintiffs' and Class Members' exposure to hazardous chemicals.

73.    *Typicality*: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and Class members suffered damages in substantially the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

74.    *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the interests of the Class. Plaintiffs have no conflicts of interest that will interfere with the maintenance of this class action. Plaintiffs' counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case, and they will adequately represent the interests of the Class.

75.    *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all

claims arise out of the same unlawful conduct by Defendants and depend on the same determinations of law and fact. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each Class member would not justify the cost of individually litigating thousands of lawsuits. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

76.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

77.     Defendants' unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

78.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

79.     This action meets the jurisdiction amount under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), because the amount of damages sought on behalf of the putative class exceeds $5,000,000.00. The putative class consists of an estimation of more than 90,000 Class members who seek to recover for the losses suffered as a result of evacuation or shelter in place orders and exposure to chlorine and other hazardous chemicals caused by Defendants' negligence and other wrongful conduct, as further described in this Complaint.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

80.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

81.     Defendants actively participated in the manufacture, processing, and storage of hazardous chemicals at issue in this litigation, and as such owed duties of care in that regard.

82.     Defendants owed a duty to Plaintiffs and Class Members to exercise due care in manufacturing, maintaining, controlling, overseeing, inspecting, and monitoring hazardous chemicals.

83.     Defendants owed a duty to maintain, monitor, oversee, inspect, and control the Plant to avoid the release of harmful chemicals into the surrounding community.

84.    Defendants breached these duties, and others, by negligently manufacturing, maintaining, controlling, overseeing, inspecting, and monitoring the hazardous chemicals.

85.    Further, Defendants breached these duties by allowing the hazardous chemicals to burn or otherwise escape from the Plant into the surrounding community.

86.    Additionally, Defendants were required to conform their conduct to applicable federal, state, and local legal requirements, including without limitation the federal Clean Air Act, the federal Clean Water Act, the federal Resource Conservation and Recovery Act, the federal Comprehensive Environmental Response Compensation and Liability Act, including specifically the Emergency Planning and Community Right-to-Know Act, Georgia Water Quality Control Act, The Georgia Waste Control Act, the Georgia Hazardous Site Response Act, the Georgia Comprehensive Solid Waste Management Act, and the regulations promulgated pursuant to the statutes.

87.    Plaintiffs and Class Members are members of the class of persons for whom legal requirements applicable to Defendants' conduct were designed to protect.

88.    Plaintiffs and Class Members' damages, and the damages suffered by those similarly situated, are the types of damages that legal requirements applicable

to Defendants' conduct were designed to guard against.

89.     As a direct and proximate result of Defendants' negligent conduct, as alleged above, Plaintiffs and Class Members suffered damages in an amount which will be proven at trial.

## COUNT II
### NUISANCE

90.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

91.     Plaintiffs have legitimate possessory rights in affected property near the Plant and legally protected interests.

92.     In allowing hazardous chemicals to escape into the open air through their reckless and negligent conduct or omissions, Defendants significantly interfered with public health, safety, peace, comfort, and convenience.

93.     Defendants' conduct, as alleged above, resulted in physical discomfort and mental annoyance to Plaintiffs and Class Members, has substantially interfered with Plaintiffs' and Class Members' ability to enjoy and use their properties and neighborhoods, and to carry on their businesses.

94.     The invasion of the use and enjoyment of Plaintiffs' and Class Members' lands by Defendants was intentional and/or unreasonable.

95.     The invasion of the use and enjoyment of Plaintiffs' and Class Members' properties by Defendants was negligent, and/or reckless, and/or caused

by an abnormally dangerous activity.

96.   Defendants acted with intent in interfering with the use and enjoyment of Plaintiff's and Class Members' properties and legally protected interests.

97.   Defendants' activities violated certain state, and local laws, ordinances, and regulations.

98.   These state and local laws, ordinances, and regulations are intended to benefit the public and protect them from exposure to harmful quantities of toxic chemical compounds, and to further protect them from interference with the reasonable use and enjoyment of the properties.

99.   Defendants maintained the Plant which released harmful quantities of chlorine and other hazardous chemicals into the air, soil, and water.

100.   The release of harmful quantities of chlorine and other hazardous chemicals is an unreasonable interference with the rights common to the general public to enjoy, peacefully and unimpeded, the air, soil, and water in the surrounding community.

101.   The release of harmful quantities of chlorine and other hazardous chemicals involves a significant interference with the public health, safety, public peace, public comfort and public convenience.

102.   The release of harmful quantities of chlorine and other hazardous chemicals is proscribed by statute, ordinance, and/or administrative regulations.

103.   Plaintiffs and Class in this action have sustained harm special and distinct from harm suffered by the general public, as Plaintiffs and Class have lost business opportunity, and have been exposed to increased concentrations of annoying, obnoxious, foul, disgusting fumes and emissions emanating from the facility, and have been caused to leave their homes, vacate the outdoors, and/or leave their businesses on at least one occasion.

## COUNT III
## STRICT LIABILITY

104.   Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein. Defendants are engaged in an ultrahazardous activity in the manufacture, processing, and storage of chlorine and other hazardous chemicals.

105.   Defendants are strictly liable for any and all damages which may occur or arise out of their distribution, transportation, storage, use and handling of chlorine and other hazardous chemicals regardless of their standard of care.

106.   The harm to Plaintiffs and the Class members, as alleged in this Complaint and incorporated by reference, was and is the kind of harm that would be reasonably anticipated based on the normal risks created by manufacturing, processing, and storing hazardous chemicals in close proximity to residential, commercial, and agricultural areas.

107.   As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiffs and the Class members have suffered and will continue to suffer

decreased property values, damage to their real and personal property, lost wages, loss of business income, and loss of business goodwill.

## COUNT IV
## TRESPASS

108.   Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

109.   Defendants caused harmful quantities of chlorine and other hazardous chemicals to be released from the Plant and to enter upon the homes, land, soil, and water of the Plaintiffs and Class Members.

110.   Harmful quantities of chlorine and other hazardous chemicals entered the Plaintiffs and Class Members' homes, land, soil, water, and breathing air.

111.   Defendants knew, or should have known, that such discharges would enter onto Plaintiffs' and Class Members' properties.

112.   Plaintiffs and Class Members never sanctioned, permitted, or authorized any invasion of their properties of the chlorine and other hazardous chemicals released by Defendants from the Plant.

113.   The invasion, presence, and spreading of the chlorine and other hazardous chemicals released by Defendants from the Plant unreasonably interferes with the Plaintiffs and Class Members' exclusive right of possession in said properties.

114.   The invasion, presence, and spreading of the chlorine and other

hazardous chemicals released by Defendants from the Plant constitutes a continuing abatable trespass by Defendants.

115. Defendants' trespass and continuing trespass are the actual and proximate cause of property damages, including specifically, the loss of use and enjoyment of their properties, and other response costs, losses, and expenses, and other compensable harm to Plaintiffs and Class Members.

## COUNT V
## PUNITIVE DAMAGES - ALL DEFENDANTS

116. Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

117. Defendants' repeated incidents involving similar fires, smoke plumes, chemical releases, and toxic smoke and dust emissions from the Conyers Plant reflect bad faith, reckless, and willful and wanton conduct on the part of Defendants.

118. Defendants' failures to address the causes of previous incidents and allowing another chemical fire to occur without adequately updating fire protection systems and emergency procedures represent bad faith, reckless, and willful and wanton conduct on the part of Defendants.

119. Defendants' misconduct has been willful, malicious and in reckless and wanton disregard for the rights of Plaintiffs and of others. As such, Defendants should be required to pay punitive damages in an amount that will deter such

misconduct in the future.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in the manner described above.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendants' unlawful conduct as allowed by law.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of expenses of litigation pursuant to O.C.G.A. § 13-6-11 because Defendants' actions evidence a species of bad faith.

f. An award of interest as provided by law, including pre-judgment and post-judgment interest.

g. Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Trial by jury is demanded.


Dated: October 3, 2024.            Respectfully submitted,

**BERT BROCK LAW, LLC**
By: _/s/ Hakeem B. Brock_____
Hakeem B. Brock, GA Bar No. 705137
Michael L. Powell, GA Bar No. 995924
229 Peachtree Street NE, Suite 2410
Atlanta, GA 30303
Telephone:  (678) 658-8102
Facsimile:    (678) 658-8145
bbrock@bertbrocklawgroup.com
mpowell@bertbrocklawgroup.com


Jayne Conroy*
Justin Presnal*
Gary DiMuzio*
**SIMMONS HANLY CONROY, LLP**
112 Madison Ave., 7th Floor
New York, NY 10016
Telephone: 212-257-8482
jconroy@simmonsfirm.com
jpresnal@simmonsfirm.com
gdimuzio@simmonsfirm.com


Jo Anna Pollock*
**SIMMONS HANLY CONROY, LLP**
One Court Street
Alton, IL 62002
Telephone: 618-259-2222
jpollock@simmonsfirm.com